**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCO TULIO BONILLA-ROMERO,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | **CASE NO.** 5:26-CV-04569-CTS<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>**(A 206-035-216)** |

## I. INTRODUCTION

On August 12, 2026, Petitioner Marco Tulio Bonilla-Romero ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally id.*) The Petition names as Respondents Markwayne Mullin, Secretary, DHS; Todd Blanche, Attorney General; David Venturella, Executive Associate Director of ICE Enforcement and Removal Operations ("ERO"); Ernesto Santacruz Jr., Acting

Director, Los Angeles Field Office, ICE; and Fereti Semaia, Warden, Adelanto Detention Center ("Respondents"). (*Id.* 1.[1]) On August 19, 2026, Respondents filed an Answer to the Petition. (Ans., ECF No. 10.) On August 24, 2026, Petitioner filed his Reply. (Rep., ECF No. 11.) For the reasons set forth below, the Court GRANTS the Petition as to Claims One and Two and ORDERS Respondents to release Petitioner from custody immediately.

## II. BACKGROUND

The Petition[2] alleges that Petitioner is a native and citizen of Honduras, who entered the United States without inspection on or around October 29, 2013. (Pet. ¶¶ 5, 11.) Shortly after his entry, Petitioner was apprehended by immigration authorities and detained at the El Centro, California, detention facility for approximately four months. (*Id.* at ¶ 12.) He was released on an immigration bond of $7,500 on or about February 19, 2014, and he has remained in the United States—first, in removal proceedings, and later, under ICE supervision—continuously since that date. (*Id.*) In April 2014, he met the woman he would eventually marry, a United States citizen. (Lebon Decl. ¶¶ 1, 4; Ex. to Lebon Decl.) After working together for many years, the couple married in March 2021. (*Id.* at ¶¶ 1–4.)

On December 11, 2018, an immigration judge ("IJ") ordered Petitioner removed to Honduras and denied his applications for asylum and statutory withholding of removal, but granted his application for withholding of removal under Article III of the Convention Against Torture ("CAT"). (Pet. ¶ 13.) That

---

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

[2] The Petition attaches Exhibits A through C as follows: (A) IJ Order Granting Withholding of Removal Under CAT; (B) ICE Check-in Documents, Notice to Appear, and Release on Bond; and (C) Petitioner's Wife's Declaration ("Lebon Declaration"). (Pet., Exs. A–C, ECF No. 1-1.)

order remains in full force and has never been reopened, terminated, or rescinded. (*Id.*) Petitioner has no criminal history in either the United States or in Honduras. (*Id.* at ¶ 14.) Since the entry of the December 11, 2018 order, Petitioner has resided in the community and complied with all terms of ICE supervision. (*Id.* at ¶ 15.) Most recently, Petitioner relocated from Paso Robles, California, to Orange County, California, and he was directed to report for his supervision check-in at ICE's office in Santa Ana. (*Id.* at ¶ 16.) On August 4, 2026, Petitioner's wife telephoned the assigned deportation/supervising officer at the Paso Robles office to confirm Petitioner's upcoming appointment and the officer expressly stated that the appointment was routine and that Petitioner would be safe. (*Id.* at ¶ 17.) On August 5, 2026, Petitioner appeared at ICE's Santa Ana office and was detained. (*Id.* at ¶¶ 18–19.) On or about August 11, 2026, Petitioner's assigned deportation officer informed him that ICE was attempting to secure travel documents to remove him to a third country, described to him as a country in Africa, Ghana, or Mexico. (*Id.* at ¶ 21.)

The Answer[3] does not dispute these allegations. (*See generally* Ans.)

## III. PETITIONER'S CLAIMS

Petitioner challenges his detention on three grounds: (1) Violation of the Fifth Amendment's Due Process Clause – Deprivation of Liberty Without Notice or a Hearing (Pet. ¶¶ 25–28); (2) Violation of the Fifth Amendment's Due Process Clause and the APA – Third-Party Removal Without Notice or a Meaningful Opportunity to Seek Protection (*id.* at ¶¶ 29–32); and (3) in the alternative, Unlawful Post-Order Detention Under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*

[3] The Answer attaches Exhibits A through E as follows: (A) Petitioner's Third Country Notice; (B) Petitioner's Form I-213; (C) Petitioner's OSUP Revocation Documents; (D) Petitioner's Warrant for Arrest; and (E) Petitioner's Warrant of Removal. (Ans., Exs. A–E, ECF No. 10-1.)

(*id.* at ¶¶ 33–35). He seeks the following: declaratory relief; immediate release; an order enjoining Respondents from removing Petitioner to any country other than the country designed in his removal order unless and until Respondents provide Petitioner written notice, in a language he understands, of the specific country to which he will be removed, and a meaningful opportunity to apply for withholding of removal and protection under CAT to that country; and an order enjoining Respondents from re-detaining Petitioner absent a pre-deprivation hearing before a neutral decisionmaker at which Respondents bear the burden of proving, by clear and convincing evidence, a material change in circumstances establishing that Petitioner is a danger to the community or a flight risk; and attorneys' fees under the Equal Access to Justice Act ("EAJA"). (*Id.* at 16–17.)

## IV. DISCUSSION

### A. Respondents Have Failed to Demonstrate that Changed Circumstances Existed at the Time Petitioner's Release Was Revoked

The detention of individuals subject to a final order of removal is governed by 8 U.S.C. § 1231(a) ("Section 1231(a)"). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (noting that Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed'"). The statute states that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Detention is authorized during the removal period. 8 U.S.C. § 1231(a)(2)(A). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Johnson*, 596 U.S. at 578–79. "Individuals released after the removal period

remain subject to terms of supervision." *Id.* at 579.

The revocation of release of an alien subject to a final order of removal who has been released from custody is governed by 8 C.F.R. §§ 241.13(i) and 241.4(*l*), "which require that 'upon revocation' the alien 'be notified of the reasons for revocation of his or her release' and given 'an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.'" *Trifonov v. Noem*, No. 5:25-CV-03460-DOC-JDE, 2025 WL 3763371, at *2 (C.D. Cal. Dec. 22, 2025) (quoting 8 C.F.R. §§ 241.13(i)(3) and 241.4(*l*)). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 were intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Id.* (quoting *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotations omitted)).

Specifically, 8 C.F.R. § 241.13(i) permits release to be revoked for only two reasons: (1) violation of the conditions of release or (2) because, "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "Pursuant to § 241.13(i)(2), the burden is on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future." *Moua v. Warden*, No. 1:26-CV-02562-TLN-DMC, 2026 WL 1158841, at *2 (E.D. Cal. Apr. 29, 2026). "The phrase 'significant likelihood' requires something more than a mere possibility." *Id.* "Respondents bear the burden of demonstrating that ICE's revocation of release is authorized by the regulations." *Hakim v. Noem*, No. 5:26-CV-00145-CV (DTBX), 2026 WL 252493, at *3 (C.D. Cal. Jan. 22, 2026).

Here, only the second of these reasons was invoked, and Respondents do not contend that Petitioner ever violated any condition of his release. (Ans. Ex. C; *see generally* Ans.) In their Answer, Respondents cite "changed circumstances" as the

reason for the revocation of Petitioner's release, pointing to the statement in the Notice of Revocation of Release given to Petitioner on the day he was re-detained that reads, "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (Ans. 6 (quoting Ans. Ex. C).) However, the same form states that "[o]n 12/11/2018, you were ordered removed to Honduras, but you were granted withholding of removal to Honduras. Your case is under review for removal to an alternate country." (*Id.*) Six days later, nearly a week after his re-detention, Petitioner was provided with a Notice of Removal stating that ICE intended to remove him to Mexico. (Ans. Ex. A.) No evidence has been presented to indicate that travel documents have been obtained. Thus, at the time Petitioner's release was revoked, it appears that no circumstances had yet actually changed or that any plan was then in place to effect Petitioner's removal to a third country. (*See* Pet. ¶ 2 ("Respondents have now informed Mr. Bonilla-Romero, through his own assigned deportation officer, that they are attempting to secure travel documents to remove him not to Honduras—which his own CAT order legally forecloses—but to an as-yet-undesignated third country, described to him only as a country in Africa, Ghana, or Mexico, and that he should 'be ready.'").) Further, even by the time Respondents' Answer was filed, Respondents were only able to state that "DHS is in the process of obtaining a travel document from Mexico to effectuate Petitioner's removal." (Ans. 2 (citing no support for this assertion).)

As another court in this district recently held, "the applicable regulation, 8 C.F.R. § 241.13, makes clear that any 'changed circumstances' justifying a noncitizen's re-detention must be present at the time that the revocation of release occurs. Action taken by the government *after* revocation of release would not constitute 'changed circumstances.'" *Erazo Saravia v. Semaia*, No. CV 26-5802-AS, 2026 WL 2679110, at *4 (C.D. Cal. Sept. 11, 2026). After noting that the only explanation of what constituted "changed circumstances" that had been presented at

the time the petitioner was re-detained was a statement in the Notice of Revocation that is virtually identical that presented in the instant case,[4] the *Erazo Sarvaia* court held that the respondents had failed "to demonstrate that any 'changed circumstances' had created a 'significant likelihood of removal in the reasonably foreseeable future' at the time of [the petitioner's] arrest." *Id.* The court specifically found that the fact that the petitioner's case "had been placed 'under review for removal'" was not "a sufficiently changed circumstances to merit revocation of release." *Id.* Thus, the *Erazo Saravia* court ordered that the petitioner be released from custody "because Respondents [had] failed to demonstrate that they had [a] legally sufficient basis to revoke her release, either for violation of her conditions or for removal in the reasonably foreseeable future." *Id.* at *5. Other courts have reached similar conclusions. *See, e.g.*, *Moua*, 2026 WL 1158841, at *2 (finding that "ICE ha[d] failed to meet its burden to show that Petitioner's revocation of release was proper 'on account of changed circumstances'" where ICE was simply "seeking a travel document to effect Petitioner's removal" at the time of the revocation); *Vardumyan v. Noem*, No. 5:26-CV-00641-MRA-MAA, 2026 WL 530759, at *4 (C.D. Cal. Feb. 20, 2026) (granting TRO application and ordering petitioner's release after noting a "fundamental flaw in the government's position—'[s]ection 241.13 requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked").

Based on the record presented, the Court finds that, as in *Erazo Saravia*, Respondents have failed to demonstrate that, at the time of Petitioner's re-detention, any changed circumstances had created a significant likelihood of removal in the

---

[4] E.g., "On September 24, 2012, you were ordered removed to El Salvador but you were granted withholding of removal to El Salvador. Your case is under review for removal to an alternate country." *Id.*

reasonably foreseeable future. Thus, Respondents did not comply with their own regulations in re-detaining Petitioner. 8 C.F.R. § 241.13(i)(2); *see Erazo Saravia*, 2026 WL 2679110, at *4. As Respondents did not have a legally sufficient basis to revoke Petitioner's release under their own regulations, the appropriate remedy is release from detention. *Erazo Saravia*, 2026 WL 2679110, at *5; *Moua*, 2026 WL 1158841, at *2.

**B. Petitioner Is Entitled to an Injunction Against Removal to a Third Country Without the Required Process**

In addition to immediate release from custody, Petitioner also seeks an injunction preventing Respondents "from removing Petitioner to any country other than the country designated in his removal order unless and until Respondents provide Petitioner written notice, in a language he understands, of the specific country to which he will be removed, and a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture as to that country." (Pet. 16.) In response, Respondents characterize this as simply requesting "that the government follow the law when it comes to third-country removals." (Ans. 6.) Essentially, then, Respondents have conceded that the law requires that Petitioner be provided with a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture as to any third-party country to which Respondents intend to remove him. This is consistent with Ninth Circuit caselaw and the holdings of other district courts in this circuit. *See Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for . . . withholding of deportation to the country to which they will be deported violates . . . the constitutional right to due process."); *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) ("[S]hould circumstances change such that Azerbaijan is the designated country of removal, the agency must provide

Sadychov with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal from Azerbaijan."); *see, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728–29 (W.D. Wash. 2025) (finding that, under Ninth Circuit precedent, "Petitioner is likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *Quach v. Mullin*, No. 5:26-CV-03843-MAR, 2026 WL 2126433, at *4 (C.D. Cal. July 21, 2026) ("Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal.").

In opposing Petitioner's claim for injunctive relief against removal to a third country without the required process, Respondents argue only that it "is improper to prospectively enjoin the government to follow the law." (Ans. 6.) In support, they cite to three cases from other circuits concerned with the impropriety of issuing abstract injunctions to simply "obey the law." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011); *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006). Here, in contrast, the injunctive relief at issue is much more specific: that Respondents be enjoined from removing Petitioner to any country other than Honduras without first providing him with notice of the country to which they seek to remove him and an opportunity to re-open his removal proceedings to apply for withholding of removal and protection under the Convention Against Torture as to that country. Since Respondents have here conceded that this is the law governing removals to third countries, the Court finds that it is appropriate to enjoin that they follow these steps before removing Petitioner to a third country.

///

///

///

## V. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING the Petition as to Claims One and Two; denying Claim Three, which was pleaded only in the alternative; and dismissing the Petition without prejudice;
2. Respondents MUST RELEASE **Petitioner Marco Tulio Bonilla-Romero (A 206-035-216)** from custody within 24 hours of entry of this Order;
3. Respondents are ENJOINED from removing Petitioner to any country other than Honduras without first providing him with notice of the country to which they seek to remove him and an opportunity to re-open his removal proceedings to apply for withholding of removal and protection under the Convention Against Torture as to that country; and
4. The Court retains jurisdiction over this case to enforce compliance with its Judgment.[5]

DATED: September 17, 2026

HONORABLE CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE

[5] Petitioner may seek reasonable costs and attorney fees after judgment has been entered, as provided in this Court's Local Rules and any statute authorizing such an award.